UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHN CLAIR SCHUTTS,

    Plaintiff,

v.

P. CHAFFEE, et al.,

    Defendants.

Case No. 2:07-CV-00703-KJD-LRL

**ORDER**

    Currently before the Court is Defendants' Motion to Dismiss (#30), filed August 2, 2007. After requesting an extension of time, Plaintiff filed an Opposition (#37), on January 9, 2008. To date, Defendants have failed to file a reply.

**I. History and Background**

    Plaintiff, currently incarcerated at Southern Desert Correctional Center, in Indian Springs, Nevada, filed a civil rights Complaint (#6), on March 6, 2007, and an Amended Complaint (#18) on May 24, 2007. Plaintiff's Complaint alleges that his civil rights were violated when incarcerated at High Desert State Prison (HDSP). Plaintiff alleges that he made complaints/kites regarding Correction Officer Chaffee (Chaffee) in regard to air conditioning, lights, water, and mail. Subsequently, when Plaintiff and his cellmate were being transferred to a different unit on September 19, 2005, Plaintiff alleges that Chaffee told them that they should not have written the above

mentioned complaints/kites. Paintiff allegedly then asked if he could obtain his laundry, and Chaffee denied his request. Plaintiff alleges that Chaffee then yelled at the top of his lungs, "the last child molester that went over there got the shit kicked out of him." (Defs.' Mot. to Dismiss Ex. E.) Plaintiff alleges that the child molester comment and refusal to retrieve the laundry were done in retaliation for his filing of complaints/kites against Chaffee.

Allegedly, Plaintiff responded to Chaffee's comment by stating "I won't be in here forever, I'll see you on the streets." (Defs.' Mot. to Dismiss Ex A, C.) Chafee and another officer perceived the comment as a threat, and placed the Plaintiff in the unit activity room to await the arrival of another officer to assist in escorting the Plaintiff to his new unit. Soon thereafter, Senior Correctional Officer Masterson (Masterson) arrived on the scene, and ordered the Plaintiff to face the wall in order to place handcuffs on the Plaintiff. According to affidavits of the officers present, Plaintiff initially complied as he was advised, and was told that if he came off the wall for any reason it would be considered an act of aggression. (Id., Ex. B.) At that point Plaintiff began turn around, and Masterson placed his hand on Plaintiff's upper torso, and told him to get back to the wall. Plaintiff however, claims that Masterson shoved Plaintiff's head into the wall a few times, and choked him before escorting Plaintiff to his new unit.

Plaintiff's Amended Complaint alleges four causes of action, for: (1) retaliation for the exercise of free speech, in violation of Plaintiff's First Amendment rights; (2) that Plaintiff was subjected to physical assault by other inmates when Chaffee stated that Plaintiff was a child molester, in violation of Plaintiff's Eighth Amendment rights; (3) that Masterson used excessive force upon the Plaintiff in violation of Plaintiff's Eighth Amendment Rights; and (4) that Masterson wrote a false disciplinary report in retaliation for Plaintiff filing a grievance, thus violating Plaintiff's First Amendment Rights.

Here, Defendants assert that Plaintiff's Complaint fails for various reasons, including (1) Plaintiff fails to state a claim upon which relief may be granted; (2) Defendants are entitled to qualified immunity; and (3) Defendants are entitled to judgment as a matter of law.

## II. Analysis

Pursuant to Fed. R. Civ. P. 12(b)(6), if on a motion to dismiss, matters outside of the pleadings are presented to, and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56. Here, although Defendants' Motion to Dismiss, as well as Plaintiff's Response, submit matters outside of the pleadings, and thereby require the Court to treat Defendants' Motion to Dismiss as a Rule 56 Motion for Summary Judgment, the Ninth Circuit has held that a "contention that the prisoner has failed to exhaust his administrative remedies . . . that [is] not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003) (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988). This is based upon the principle that motions for summary judgment are decided on the merits, whereas motions to dismiss an action for failure to exhaust administrative remedies are not decided on the merits. Wyatt v. Terhune, 315 F.3d 1120 (citing Stauffer Chem. Co. v. FDA, 60 F.2d 106, 108 (9th Cir. 1982); Heath v. Cleary, 708 F.2d 1376, 1380 n. 4 (9th Cir. 1983). Furthermore, in deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt v. Terhune, 315 F.3d 1119–20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 369. Therefore, here, before examining Defendants' claims for dismissal under the Rule 56 standard, the Court first examines Defendants' contention that Plaintiff has failed to exhaust administrative remedies under the proper standard of Fed. R. Civ. P. 12(b).

## III. Failure to Exhaust Administrative Remedies

Defendants contend that Plaintiffs' Complaint should be dismissed in its entirety because Plaintiff failed to exhaust his administrative remedies prior to filing suit in federal court as required under section 1997e(a) of the Prison Litigation Reform Act of 1995. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." Under this Rule, prisoners must complete the prison's administrative grievance process regardless of the relief offered. Booth v. Churner, 532 U.S. 731, 741 (2001). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Id. at 741. According to the Supreme Court, the purpose of section 1997e(a) was to "reduce the quantity and improve the quality of prisoner suits . . . [to] afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524–25 (citing Booth v. Churner, 532 U.S. at 737). If the district court concludes that an inmate has failed to exhaust nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. See Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d at 368 n. 3 (9th Cir. 1988).

The Supreme Court recently reaffirmed that the Prison Litigation reform Act of 1995 requires a prisoner to exhaust any and all available administrative remedies before filing a case in federal court. Woodford v. Ngo, 126 S.Ct. 2378, 2380 (2006). Specifically, in Woodford v. Ngo, the court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. The Woodford court also held that "the PLRA exhaustion requirement requires proper exhaustion," stating that were the PLRA not to require proper exhaustion, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court." Id. at 2387, 2389.

NDOC has established an administrative grievance system for prisoner complaints. Under Administrative Regulation 740 (AR 740), in order to exhaust administrative remedies, an inmate must complete three levels of review, one informal, and two formal. (Defs.' Mot. to Dismiss Ex F.) Under AR 740 an inmate may file an initial grievance, and if dissatisfied with the response he or she

4

receives, the inmate may appeal to the next (or formal) level of review. (Id.) Each subsequent level of grievance is reviewed by a higher level within the NDOC organizational structure. At the first level, the grievances are reviewed by the Warden, and at the second level, grievances are reviewed by Central Department of Corrections Administrators. In order to exhaust the grievance procedure, an inmate is required to follow all three levels of review. Additionally, pursuant to AR 740, an inmate is required to file an informal grievance within six months if the issue involved personal injury, medical claims, or any other tort claims. (Id. at 13.)

Here, Plaintiff did not grieve the September 19, 2005, incident until March 27, 2006—beyond the six month deadline, in violation of AR 740's grievance deadline. AR 740 states that an inmate who fails to submit a proper informal grievance form within the six (6) month period abandons his right to pursue resolution of that claim. (Id.) Plaintiff contends that he filed a timely grievance shortly after the September 19, 2005, incident. Specifically, Plaintiff contends that he requested a grievance form but was given a one page photocopy rather than the "usual multi-part form", and that he filed that grievance on or about September 19, 2005, while incarcerated at High Desert State Prison. (See Opp. at 6, Ex 2.) Plaintiff alleges that his grievance in regard to the September 19, 2005, incident as well as other grievances were destroyed. (Id.)

Here, the Court finds that Plaintiff, by filing his grievance beyond the AR 740 six month grievance deadline, abandoned his right to pursue resolution of all claims relating to the September 19, 2005, incident. Although Plaintiff argues that he did file a grievance, and that said grievance was destroyed, he has failed to produce any evidence of said grievance, or any grievance filed while he was incarcerated at High Desert State Prison. Moreover, Plaintiff was transferred to the Lovelock Correctional Center on December 22, 2005, and could have filed a grievance upon being transferred at that time. Plaintiff however, waited until March 27, 2006, beyond AR 740's grievance timeline to do so. Therefore, although Plaintiff's later grievance regarding the September 19, 2005, incident was processed, the Court finds that under Woodford v. Ngo, and AR 740, Plaintiff abandoned his right to pursue resolution of said claims. The fact that NDOC processed Plaintiff's untimely

grievance does not grant Plaintiff standing to file a complaint in federal court.  Therefore, the Court hereby finds that Plaintiff's Complaint is dismissed.

**III. Conclusion**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#30), is **GRANTED**.

DATED this 26th day of March 2008.

_____
Kent J. Dawson
United States District Judge